ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| WILLIAM RIVERA Y OTROS<br><br>Parte Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES COND. PLAYAMAR Y OTROS<br><br>Parte Recurrida | KLRA202500182 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor (DACO)<br><br>Caso Núm.:<br>C-SAN-2023-0013681<br><br>Sobre:<br>Ley de Condominios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

La parte recurrente, compuesta por el Sr. William Rivera y otros titulares del Condominio Playamar (en conjunto, parte recurrente), solicita que revoquemos la *Resolución* sumaria emitida y notificada el 3 de febrero de 2025, por el Departamento de Asuntos del Consumidor (DACO). Mediante el referido dictamen, el DACO declaró no ha lugar la querella instada por la parte recurrente contra el Consejo de Titulares del Condominio Playamar y su Junta de Directores.[1]

Luego de presentado el recurso, la parte recurrente instó una *Moción para que se ordene la paralización de los procedimientos relacionados con la ejecución de la resolución recurrida.* Mediante *Resolución* emitida el 31 de marzo de 2025, este Foro ordenó la paralización de los efectos de la resolución emitida por el DACO el 3

---

[1] Apéndice del recurso, págs. 18-28.

de febrero de 2025. A su vez, concedimos término a la parte recurrida para presentar su oposición al recurso.

En cumplimiento con nuestra resolución, el Consejo de Titulares del Condominio Playamar (Consejo de Titulares) compareció mediante su *Alegato en oposición a petición de revisión.*

Con el beneficio de la comparecencia de las partes, y por los fundamentos que expondremos a continuación, se confirma el dictamen recurrido y se deja sin efecto la paralización que fue ordenada por este Tribunal mediante resolución de 31 de marzo de 2025.

**I.**

El Condominio Playamar (Condominio) ubica en el municipio de Carolina y está sometido al régimen de propiedad horizontal, según surge de la Escritura Número 12 sobre Compraventa otorgada el 21 de febrero de 1974 ante el notario Carlos Roberto Vélez. El Condominio consta de 50 apartamentos residenciales.

El 16 de septiembre de 2021, el Consejo de Titulares del Condominio convocó a los titulares a una Asamblea Extraordinaria a celebrarse el 30 de septiembre de 2021. De la convocatoria a dicha asamblea surge que, entre otros asuntos, se escogería una nueva Junta de Directores del Condominio. También, se atendería la propuesta a enmienda al Reglamento del Condominio para prohibir el arrendamiento a corto plazo (por un término menor de 6 meses) e imponer multas para su cumplimiento. La convocatoria señaló que los titulares con más de un (1) apartamento tenían derecho a un (1) solo voto independientemente del número de apartamentos de que fuese propietario.[2]

Celebrada la asamblea en la fecha pautada, el 7 de octubre de 2021, la Junta de Directores del Condominio notificó a los titulares

---

[2] *Íd.,* págs. 57-58.

el Acta de la Asamblea. De esta surge que la enmienda al Reglamento del Condominio se aprobó con 24 votos a favor y 9 en contra.[3] La parte recurrente asistió a la asamblea y emitió su voto en contra a la enmienda propuesta.[4]

Posteriormente, el 1 de diciembre de 2021, la Junta de Directores del Condominio notificó a los titulares los resultados de las votaciones a la enmienda al Reglamento del Condominio.[5] Más adelante, el 12 de abril de 2022, la Junta de Directores envió una carta a todos los titulares para informarles que, a partir del 1 de mayo de 2022, comenzaría a emitir multas a quienes estuvieran violentando la prohibición de alquileres a corto plazo.[6] A continuación, el 28 de junio de 2022, mediante correo electrónico, la Junta de Directores solicitó a los titulares que arrendaban sus apartamentos a corto plazo el cese de dicha práctica o, de lo contrario, advirtió que procedería a emitir multas. También en el mismo correo electrónico, la Junta de Directores notificó a los titulares la contratación de los servicios de guardia de seguridad, a partir del 1 de julio de 2022. Se anunció que entre las funciones del oficial de seguridad se encontraba registrar la entrada y salida de visitantes y residentes.[7]

Así las cosas, el 13 de diciembre de 2022, la parte recurrente recibió de la Junta de Directores del Condominio un estado de cuenta donde surgen multas expedidas en su contra a partir del mes

---

[3] Se hace constar que mediante *Sentencia* emitida el 24 de agosto de 2022, por este Tribunal de Apelaciones, en el recurso *Ana Rosa Montes Arraiza v. Consejo de Titulares y Junta de Directores Cond. Playamar,* KLRA202200362, se confirmó la decisión del DACO de declarar sin lugar la querella de ese caso y concluir que el Consejo de Titulares está facultado para enmendar el Reglamento del Condominio, con la anuencia de los titulares, y prohibir el arrendamiento a corto plazo.

[4] *Íd.,* págs. 65-68.

[5] *Íd.,* págs. 70-71. El documento indica que en la votación participaron 42 de los 47 titulares del Condominio, lo que representó un 85.48% de participación numérica de titulares. La enmienda al Reglamento del Condominio se aprobó con 31 votos a favor (58.74%) y 11 votos en contra (26.74%). A su vez, la votación a favor constituyó el 68.72% del total participaciones en las áreas comunes del Condominio, *versus* el 31.28% de las votaciones en contra.

[6] *Íd.,* pág. 72.

[7] *Íd.,* pág. 78.

de julio de 2022, correspondiente al periodo de incumplimiento con la prohibición de arrendar a corto plazo.[8]

La parte recurrente presentó su querella ante el DACO el 31 de enero de 2023.[9] Solicitó que la agencia declarara nula la enmienda que prohíbe el arrendamiento a corto plazo en el Condominio, arguyendo que esta fue aprobada contrario a lo establecido en la *Ley de Condominios de Puerto Rico*, Ley Núm. 129-2020, la Escritura Matriz y el Reglamento del Condominio. En específico, planteó que la Junta de Directores modificó la norma para el cómputo de las votaciones, ya que adjudicó a los titulares con más de un (1) apartamento únicamente el porcentaje de participación correspondiente al apartamento de mayor cabida, en lugar de sumar las participaciones de la totalidad de los apartamentos. Adujo que no se podía excluir la participación adicional de los titulares con más de un apartamento, como se hizo en la asamblea impugnada. Además, fundamentada en dicho planteamiento de nulidad, la parte recurrente impugnó las multas expedidas por la Junta de Directores del Condominio a raíz de la enmienda. También solicitó la cancelación del contrato de la compañía de seguridad, basado en que era un gasto no presupuestado, implantado sin el consentimiento del Consejo de Titulares. Así también, requirió la corrección del Acta de la Asamblea Extraordinaria celebrada el 30 de septiembre de 2021, para que reflejara los comentarios relacionados a la votación de la enmienda al Reglamento del Condominio.

La Junta de Directores y el Consejo de Titulares del Condominio presentaron sus respectivas mociones de desestimación sumaria de la querella.[10] En síntesis, plantearon que

---

[8] *Íd.,* págs. 80-88.
[9] *Íd.,* págs. 41-56.
[10] *Íd.,* págs. 109-132, 152-160. La Junta de Directores presentó la solicitud de desestimación sumaria de la querella, a la que se unió el Consejo de Titulares.

el término aplicable para impugnar la enmienda al reglamento, las multas expedidas y la contratación del servicio de compañía de seguridad era de treinta (30) días a partir de la fecha en que se tomó el acuerdo o determinación. Así, arguyeron que la querella incoada el 31 de enero de 2023, para impugnar los acuerdos alcanzados en la asamblea del 30 de septiembre de 2021, se encontraba prescrita, al haberse presentado en exceso del mencionado término de treinta (30) días. De otra parte, argumentaron que la enmienda al Reglamento se aprobó conforme a lo dispuesto en la *Ley de Condominios de Puerto Rico*, referente a la contabilización del por ciento de participación de aquellos titulares con más de un apartamento.

El 3 de febrero de 2025, el DACO emitió y notificó la *Resolución*[11] objeto del presente recurso, basado en la facultad que le confiere su Reglamento de Procedimientos Adjudicativos, Núm. 8034 de 14 de junio de 2011, para la resolución sumaria de las controversias. De tal forma, expresó que la prueba del expediente era suficiente para determinar la inexistencia de controversias sustanciales de hechos y resolver el asunto de manera sumaria. Así, en la resolución, consignó las siguientes determinaciones de hechos:

> 1. Los querellantes William Rivera y Megan Lynn Dean son titulares de los apartamentos 15-A y 15-C del Condominio Playamar mediante la Escritura Número doscientos dieciocho (218) sobre Compraventa otorgada el 22 de agosto de 2019 ante el Notario Félix Joel Zambrana Ortiz; y mediante la Escritura Número treinta y seis (36) sobre compraventa otorgada el 14 de junio de 2021 ante el Notario José Rafael Báez Cortines.
>
> 2. La querellante Frances Maldonado Rosado es titular del apartamento 1-A del Condominio Playamar mediante la Escritura Número ochenta y cuatro (84) sobre compraventa otorgada el 15 de noviembre de 2019 ante la Notario Claudia Elizabeth Santiago Olivera.
>
> 3. La querellante Jennifer Lynne Chaitin es titular de los apartamentos PH-A y PH-B del Condominio Playamar mediante la Escritura Número doscientos

---

[11] *Íd.,* págs. 20-28.

diecisiete (217) sobre compraventa otorgada el 20 de noviembre de 2017 ante el Notario Juan Carlos Ortega Torres; y mediante la Escritura treinta y dos (32) sobre liquidación de participación de dicha propiedad otorgada el 16 de diciembre de 2022 ante la Notario Gloria Rivera Carrero. El PH-B fue adquirido por la titular y así consta en la Escritura Número uno (1) sobre compraventa otorgada el 28 de junio de 2021 ante la Notario Ethel M. Santisteban Rivera.

4. Los querellantes John Edward Peterson & Mary Grissel Ruiz-Vachier son titulares del apartamento PH-C del Condominio Playamar mediante la Escritura Número doce (12) sobre compraventa otorgada el 23 de marzo de 2019 ante la Notario Claudia Elizabeth Santiago Olivera.

5. El Condominio Playamar ubicado en el municipio de Carolina está sometido al Régimen de Propiedad Horizontal según surge de la Escritura Número doce (12) otorgada el 21 de febrero de 1974 ante el notario Carlos Roberto Vélez.

6. El Condominio Playamar consta de cincuenta (50) apartamentos residenciales.

7. El 16 de septiembre de 2021 el Consejo de [T]itulares convocó a los titulares a una Asamblea Extraordinaria a celebrarse el 30 de septiembre de 2021 a las 6:30 pm.

8. De la Convocatoria de la Asamblea Extraordinaria surge que entre otros asuntos, se atendería Propuesta a Enmienda al Reglamento del Condominio para prohibir alquileres a corto plazo. La enmienda al Reglamento propuesta lee de la siguiente forma:

ARTICLE VII
OBLIGATIO[N]S OF THE OWNERS
Section 1. The owners are obligate to:
(l) Rents and/or Leases for less than six months are prohibited.
(m) Notify the Administration and/or the Board of Directors any rent or lease of the apartment. In any rent of the apartment the owner should provide the administration and/or board of directors a copy of agreement, with the name, email, and phone of the tenant and all other requirements that from time to time the Administration and/or the Board of Directors may request.

ARTICLE IX
COMPLIANCE AND DEFAULT
(d) The board of directors will have the authority to impose fines on any owner for violations of the rules established in the master deed of the building, the law and/or the By Laws, committed by the owner, its occupant, visitor and/or a supplier up to the sum of one hundred dollars ($100) for each violation incurred. When the violation of the rules is committed by a short-term rental occupant, the fines will be double the amount to a maximum of two hundred (200) dollars. If

the fines are not paid, the services will be suspended as is done with the non-payment of maintenance fees.

9. Los querellantes de epígrafe asistieron a la Asamblea celebrada y emitieron su voto en contra.

10. La Enmienda al Reglamento se aprobó por votación dos terceras (2/3) partes de los titulares que a su vez reunían dos terceras partes (2/3) de las participaciones en las áreas comunes. Los titulares con más de un apartamento tenían derecho a un (1) solo voto y se consideró el apartamento con mayor por ciento de participación.

11. El 7 de octubre de 2021 se notificó el Acta de la Asamblea.

12. El 1 de diciembre de 2021 se les notificó los resultados de las votaciones respecto a la Enmienda al Reglamento.

13. El 12 de abril de 2022 la Junta de Directores envió una carta a los titulares para informarles que efectivo el 1 de mayo de 2022 comenzarían a emitir multas a quienes estuvieran violando las disposiciones sobre alquileres a corto plazo.

14. El 28 de junio de 2022 la Junta de Directores notificó la contratación de los servicios de guardia de seguridad que no había sido presupuestada, efectivo desde el 1 de julio de 2022.

15. El 28 de junio de 2022 mediante correo electrónico se les solicitó a los titulares que alquilaban apartamentos a corto plazo el cese de dicha práctica o de lo contrario procederían a emitir multas.

16. La parte querellante alegó inicialmente en su querella que los querellantes han solicitado documentación del Consejo de [T]itulares y la Junta de Directores no ha cumplido con su deber de hacerla disponible. Sin embargo, la parte querellante posteriormente expresó que dichos documentos fueron recibidos el 18 de agosto de 2023.

17. El 13 de diciembre de 2022 los querellantes recibieron de la Junta de Directores un estado de cuenta donde surgen las multas expedidas desde el mes de julio de 2022 por alegados incumplimientos con la prohibición de los alquileres a corto plazo.

18. La parte querellante presentó la querella de epígrafe el 31 de enero de 2023 en la que alegó que la Enmienda al Reglamento del Condominio para prohibir los alquileres a corto plazo es contraria a lo dispuesto en la ley de condominio toda vez que se modificó proceso de votación para adjudicarles a los titulares con más de un apartamento, únicamente el porcentaje de participación correspondiente al apartamento de mayor cabida.

19. De igual manera, la parte querellante impugnó las multas expedidas por la Junta de Directores, por el incumplimiento con la prohibición de alquilar sus apartamentos a corto plazo.

20. La parte querellada presentó moción de desestimación alegando, en síntesis, que la querella está prescrita toda vez que fue presentada fuera del término de treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo, por ser alegadamente, muy perjudicial a los intereses de los querellantes.[12]

A tenor con las anteriores determinaciones, el DACO concluyó que el planteamiento sobre nulidad de la enmienda al reglamento estaba sujeta al término prescriptivo de dos (2) años dispuesto en el Artículo 65 de la *Ley de Condominios de Puerto Rico,* infra, para impugnar los acuerdos del Consejo de Titulares. Por ello, coligió que dicha reclamación no se encontraba prescrita al momento de instarse la querella. En cuanto a los méritos de dicho planteamiento de nulidad de la enmienda al Reglamento del Condominio, el DACO concluyó que:

La enmienda se aprobó por votación de dos terceras (2/3) partes de los titulares que a su vez reunían dos terceras (2/3) partes de las participaciones en las áreas comunes. Los titulares con más de un apartamento tenían derecho a un (1) solo voto y se consideró el apartamento con mayor por ciento de participación. De la evaluación del expediente, es nuestra apreciación que la votación de la enmienda aprobada se hizo conforme a lo dispuesto en la Ley de Condominios. Los titulares hábiles para votar y con más de un apartamento solo tiene[n] derecho a un (1) voto y se tomará en consideración el apartamento de mayor participación en las áreas comunes.[13]

Por otro lado, el DACO resolvió que carecía de jurisdicción para atender los reclamos relacionados con las multas expedidas por violaciones a la prohibición de arrendar los apartamentos a corto plazo, la contratación de los servicios de guardias de seguridad y la corrección del Acta de la Asamblea Extraordinaria llevada a cabo el 30 de septiembre de 2021. Ello, por haberse impugnado fuera del término de treinta (30) días disponible para aquellos acuerdos que

---

[12] *Íd.*, págs. 20-22.
[13] *Íd.,* pág. 26.

el titular alegue que le son perjudiciales. A tales efectos, puntualizó que:

> [L]os titulares recibieron la notificación del [Acta] de la Asamblea el 7 de octubre de 2021. Asimismo, el 12 de abril de 2022, la Junta de Directores envió una carta a los titulares para informarles que efectivo el 1 de mayo de 2022 comenzarían a emitir multas a quienes estuvieran incumpliendo la prohibición de alquilar los apartamentos a corto plazo. Por otra parte, el 28 de junio de 2022 la Junta de Directores notificó la contratación de los servicios de guardia de seguridad efectivo el 1 de julio de 2022 y en dicha comunicación nuevamente solicita a los titulares el cese del alquiler de los apartamentos a corto plazo y advierte que quien incumpla con ello sería multado. El 13 de diciembre de 2022 los querellantes recibieron de la Junta de Directores un estado de cuenta donde surgen las multas expedidas desde el mes de julio de 2022 por alegados incumplimientos con la prohibición de los alquileres a corto plazo.
>
> Por consiguiente, la parte querellante tenía treinta (30) días siguientes a la fecha en que fue notificad[a] de la determinación o acuerdo para presentar la impugnación de esta. La parte presentó dicha impugnación fuera del término de treinta (30) días dispuestos por la Ley de Condominios.[14]

En virtud de lo anterior, el DACO declaró No Ha Lugar la *Querella* instada por la parte recurrente.

En desacuerdo, el 23 de febrero de 2025, la parte recurrente instó una *Solicitud de Reconsideración*.[15] En ésta, consignó su objeción a la adjudicación sumaria de la controversia, arguyendo la existencia de controversia sobre los hechos del caso. Además, señaló que el DACO erró al interpretar cuál era la votación requerida para una modificación al Reglamento del Condominio y al determinar que el término prescriptivo aplicable para la impugnación de multas y la contratación de una compañía de seguridad era de treinta (30) días -aplicable a todo tipo de impugnación- y no de dos (2) años establecido para impugnar los acuerdos contrarios a la Ley de Condominios, la Escritura Matriz y el Reglamento del Condominio. Arguyó que si el reclamo de nulidad de la enmienda al reglamento

---

[14] *Íd.,* pág. 26.
[15] *Íd.*, págs. 29-36.

está sujeto al término prescriptivo de dos (2) años, entonces todas las acciones derivadas del tal acción ilegal igualmente se encontraban atadas al referido término prescriptivo de dos (2) años, y no al de treinta (30) días.

El 10 de marzo de 2025, el DACO dictó *Resolución* mediante la cual declaró no ha lugar la solicitud de reconsideración.[16]

Inconforme con la decisión, el 27 de marzo de 2025, la parte recurrente instó el recurso que nos ocupa y apuntó los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL DACO AL RESOLVER LA QUERELLA SUMARIAMENTE, SIN CONSIDERAR QUE HABIA CONTROVERSIA REAL DE HECHOS PERTINENTES QUE NO HABIAN SIDO DEBIDAMENTE PROBADOS.
>
> SEGUNDO ERROR: ERRÓ EL DACO EN SU INTERPRETACIÓN DE HECHOS Y DERECHO EN LA APLICACIÓN CONTRADICTORIA DE LOS TÉRMINOS PRESCRIPTIVOS, SEGÚN LA LEY 129-2020.
>
> TERCER ERROR: ERRÓ EL DACO EN SU INTERPRETACIÓN Y APLICACIÓN DE LA LEY 129-2020 RESPECTO AL CÓMPUTO DE VOTOS REQUERIDOS PARA LA ENMIENDA DEL REGLAMENTO DEL CONDOMINIO.
>
> CUARTO ERROR: ERRÓ EL DACO AL CONCLUIR QUE LA CONTRATACIÓN DE UNA COMPAÑÍA DE SEGURIDAD SIN LA AUTORIZACIÓN DEL CONSEJO DE TITULARES Y SIN HABER SIDO APROBADO EL GASTO EN EL PRESUPUESTO NO CONSTITUYO UNA ACTUACIÓN ILEGAL DE LA JUNTA DE DIRECTORES.
>
> QUINTO ERROR: ERRÓ EL DACO AL NO ORDENARLE A LA JUNTA DE DIRECTORES Y AL CONSEJO DE TITULARES LA CELEBRACIÓN DE UNA NUEVA ASAMBLEA POR HABER EXCLUIDO A LOS QUERELLANTES POR ALEGADAS DEUDAS POR CONCEPTO DE MULTAS QUE ESTABAN SIENDO IMPUGNADAS DURANTE ESTE PROCESO.

Por su parte, el 16 de abril de 2025, el Consejo de Titulares presentó su *Alegato en oposición a petición de revisión* y solicita que confirmemos la *Resolución* recurrida tras afirmar que el DACO interpretó correctamente lo establecido en la Ley Núm. 129-2020, *supra.*

---

[16] *Íd.* págs. 39-40.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla. *Transp. Sonell, LLC v. Jta. Subastas ACT,* 214 DPR ___ (2024), 2024 TSPR 82; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012). Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). Véase, además, Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada

en evidencia sustancial. *Otero v. Toyota,* supra, pág. 728. En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota,* supra, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628

(2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

**B.**

En cuanto al pronunciamiento de órdenes y resoluciones sumarias por parte de las agencias administrativas, la Sección 3.7 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017 (Ley Núm. 30-2017), 3 LPRA sec. 9647 dispone, en lo pertinente, que:

> [...]
>
> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

La referida sección faculta a las entidades administrativas a disponer de los asuntos ante su consideración mediante resolución sumaria. *OCS v. Universal*, 187 DPR 164, 177 (2012). Dicho mecanismo promueve agilizar el proceso adjudicativo en los casos en los que no estén presentes hechos materiales en controversia. *supra,* pág. 178. El Tribunal Supremo ha expresado que nada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y toda la evidencia documental que surge del expediente señale la corrección de la determinación de la agencia. *Íd.,* citando a *Mun. de San Juan v. CRIM*, 178 DPR 163, 179 (2010).

Sobre este particular, la Regla 11.1 del *Reglamento de Procedimientos Adjudicativos*, Reglamento Núm. 8034 del 14 de junio de 2011 (Reglamento Núm. 8034), menciona lo siguiente:

Regla 11-Órdenes y Resoluciones Sumarias

El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de una vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

**C.**

El Art. 2 de la *Ley de Condominios de Puerto Rico* (en adelante, *Ley de Condominios*), Ley Núm. 129-2020, 31 LPRA sec. 1921a, establece que, la ley se aprobó con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal. La *Ley de Condominios* provee mecanismos para los conflictos inevitables que surgen del *modus vivendi* bajo un régimen de propiedad horizontal. *Srio. D.A.C.O.* v. *J. Condóminos C. Martí*, 121 DPR 807, 814 (1988). Asimismo, otro propósito que tiene la ley es la creación de un marco organizacional de un gobierno interno y canalizar los problemas de la vida comunitaria. *Íd.*, pág. 815. La ley detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. *Íd.*

De otra parte, la Junta de Directores es el órgano ejecutivo que dirige (o la persona, en caso del Director), y supervisa la gestión administrativa del edificio de acuerdo a las directrices contenidas en la escritura, en el Reglamento y en los acuerdos del Consejo de Titulares. M. J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 3ª ed., San Juan, PR, Ediciones SITUM,

2023, pág. 235. La responsabilidad fundamental de la Junta de Directores es velar por el buen funcionamiento de los condominios logrando que se ejecuten las disposiciones de la ley, de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares. *Consejo de Titulares* v. *Gómez Estremera et al.*, 184 DPR 407, 418 (2012).

La *Ley de Condominios* le encomendó a DACO la rápida adjudicación de reclamos de los condómines relativos a la administración del edificio. *Consejo de Titulares* v. *Gómez Estremera et al.*, supra, pág. 420. Se puede presentar ante DACO, las acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. *Amil v. J. Dir. Cond. Pumarada*, 156 DPR 495, 500 (2002).

El Artículo 65 de la Ley de Condominios, 31 LPRA sec. 1923j, dispone un término para impugnar las acciones de la Junta de Directores y determinaciones del Consejo de Titulares. Dicho artículo expresa que:

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:
>
> (a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> (b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> (c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
>
> [...]
>
> Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho

acuerdo o determinación, si se hizo en su presencia, o dentro de los **treinta (30) días** siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los **dos (2) años**. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley.

El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. **Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene**. En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. (Énfasis suplido).

El término para ejercer la impugnación dependerá del supuesto bajo el que se presente. Si se trata de una impugnación de acuerdos, acciones u omisiones que constituyan una violación a la *Ley de Condominios,* supra, la acción prescribirá a los dos (2) años. De tratarse de un acuerdo o acción que la ley faculta a la Administración o al Consejo de Titulares adoptar, entonces la impugnación tendrá un término prescriptivo de treinta (30) días, computados a partir de la fecha en que se haya tomado el acuerdo o la determinación si se hizo en presencia del titular o dentro de los treinta (30) días a partir de la fecha de notificación del acuerdo si el titular reclamante no estuvo presente. M. J. Godreau, *op. cit.,* págs. 301-302. Para poder instar alguna de las acciones previstas, el titular deberá demostrar que no tiene deuda vencida con el Consejo

de Titulares, salvo cuando el objetivo de la acción sea impugnar la deuda que alegadamente se tiene. M. J. Godreau, *op. cit.*, pág.303.

Por otra parte, el Artículo 14 de la *Ley de Condominios*, 31 LPRA, sec. 1921m, establece en cuanto al contenido del reglamento lo siguiente:

> El reglamento podrá contener todas aquellas normas y reglas en torno al uso del inmueble y sus apartamentos, ejercicios de derechos, instalaciones y servicios, gastos, administración y gobierno, seguros, conservación y reparaciones, que no contravengan las disposiciones de esta Ley. Proveerá obligatoriamente lo siguiente:
>
> (a) Forma de administración, indicándose si estará a cargo de un Director o de una Junta de Directores, con expresión de sus facultades, remoción y, en su caso, remuneración. Deberá especificar cuáles, si algunas, de sus facultades y deberes, podrá delegar el Director o la Junta de Directores a un Agente Administrador.
>
> (b) Fecha en que se celebrará la asamblea anual.
>
> (c) Sistema uniforme de convocatoria o citación para las asambleas de los titulares, especificando el método de notificación que permita evidenciar la misma.
>
> (d) Definición del concepto de mayoría que regirá para el inmueble en cuestión.
>
> (e) Persona que presidirá y la que llevará el libro de actas en que han de constar los acuerdos.
>
> (f) Cuidado, atención y vigilancia del inmueble en sus elementos y servicios comunes, generales o limitados.
>
> (g) Manera de recaudar los fondos de los titulares para el pago de los gastos comunes.
>
> **En cualquier momento, el titular único del inmueble o, si hubiere más de uno (1), dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras (2/3) partes de las participaciones en las áreas comunes, podrán modificar el reglamento, pero siempre deberá quedar regulado cada extremo de los comprendidos en este Artículo**. La modificación tendrá que constar en escritura pública y, además, se presentará para su inscripción en el registro particular de la finca matriz, dejándose archivada en el Registro de la Propiedad copia certificada, según dispone el Artículo 13 de esta Ley.
>
> **La modificación vinculará a todos los titulares desde que se haya obtenido el voto afirmativo de las dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes o desde que haya transcurrido el plazo de treinta (30) días**

**dispuesto en el Artículo 52 (c) de esta Ley sin que hubiera oposición de más de una tercera (1/3) parte de los titulares, que a su vez, reúnan una tercera (1/3) parte de las participaciones en las áreas comunes**. Respecto a terceros, la modificación no surtirá efecto sino a partir de la fecha de presentación para archivo en el Registro de la Propiedad, de la escritura pública en que se haga constar la enmienda, uniéndose copia certificada de la misma a la de la escritura de constitución del régimen y tomándose nota del hecho de la modificación del reglamento en el registro particular de la finca matriz. (Énfasis suplido).

El reglamento no puede enmendarse sin el voto a favor de dos terceras partes de los condóminos y ciertas medidas requieren unanimidad. Muñiz Argüelles, L., *Lecciones sobre derechos reales*, San Juan, Puerto Rico, 2023, pág. 362.

La votación de los condóminos se llevará a cabo conforme el Art. 51 de la *Ley de Condominios*, 31 LPRA sec. 1922w, el cual dispone, en lo atinente, que:

[...]

Cada titular tendrá derecho a un voto independientemente del número de apartamentos de que es propietario, para efectos del cómputo de mayoría numérica de titulares, y/o derecho al voto con arreglo al porcentaje correspondiente a su apartamento para efectos del cómputo de mayoría de porcentajes, dependiendo de la definición del concepto de mayoría que rija para el inmueble. Se computará el por ciento de participación que sea mayor entre los apartamentos que pertenezcan a un mismo titular.

[...]

De otro lado, el Artículo 52 de la *Ley de Condominios*, 31 LPRA sec. 1922x, establece las normas para la adopción de acuerdos del Consejo de Titulares. En lo concerniente, su inciso (c) expone:

(c) Cuando los titulares presentes en una asamblea convocada para tomar un acuerdo que requiera unanimidad o de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes estos adoptasen dicho acuerdo, aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad.

La oposición a un acuerdo que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes deberá fundamentarse expresamente, bien en la asamblea o por escrito, según se dispone en el párrafo anterior, y en ningún caso podrá basarse en el capricho o en la mera invocación del derecho de propiedad. La oposición infundada se tendrá por no puesta. La declaración de un voto caprichoso será tomada por el Consejo de Titulares en la asamblea en cuestión.

Cuando un titular que no asistió a la asamblea, presente ante la Junta de Directores, su oposición a una determinación del Consejo de Titulares que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, la Junta de Directores determinará si la objeción fue fundamentada o no, y le notificará al titular su determinación. Si se determina que la oposición es infundada, se tendrá por no puesta. El titular podrá impugnar dicha determinación ante el Departamento de Asuntos del Consumidor, a partir de la fecha de notificación de la determinación de la Junta de Directores.

Una vez se acuerde realizar determinado gasto, obra, o proyecto que requiera el voto de dos terceras partes (2/3) de todos los titulares que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, los detalles o medidas accesorias para la ejecución y realización final de tal obra o proyecto, no estarán sujetos a la aprobación de todos los titulares, bastando para ello, en caso de requerirse una consulta al Consejo, la autorización por voto mayoritario.

Como se observa de las anteriores disposiciones, cada titular tendrá derecho a un voto sin importar el número de apartamentos al que es propietario. Ahora bien, la ley ordena que se le debe notificar a los no asistentes del acuerdo para dentro del término de treinta (30) días expresen su voto. Art. 52 (c) de la *Ley de Condominios*, supra; Muñiz Argüelles, *op. cit,* pág. 363. Los titulares que no se expresen pasado el término de treinta (30) días se considera como un voto a favor de la medida. Muñiz Argüelles, *op. cit.* El Art. 52 de la *Ley de Condominios*, supra, provee varios mecanismos en caso de insuficiencia de votos. De algún acuerdo requerir unanimidad, la ley ordena notificar a los no asistentes del acuerdo. Muñiz Argüelles, *op. cit,* pág. 363. Los titulares ausentes

tendrían treinta (30) días para expresar su endoso u oposición a la medida propuesta. *Íd.*

**III.**

En su primer señalamiento de error, la parte recurrente señaló que DACO incidió al resolver sumariamente la querella. Dicha parte entiende que existe controversia sobre los hechos del caso.

Conforme citado, la LPAU, *supra,* y el Reglamento Núm. 8034, *supra,* facultan a una agencia administrativa a poder emitir una resolución de forma sumaria si del análisis de la totalidad del expediente entiende que no existen hechos en controversia y el asunto a resolver es uno de estricto derecho.

En el presente caso no existe controversia sobre los hechos del caso. La parte recurrente es titular de varios apartamentos del Condominio. El 30 de septiembre de 2021, el Consejo de Titulares celebró una asamblea mediante la cual, entre otras cosas, se aprobó una enmienda al Reglamento del Condominio que introdujo la prohibición de arrendar los apartamentos a corto plazo. La votación culminó con 24 votos a favor y 9 en contra. Tampoco está en controversia que la parte recurrente compareció a dicha asamblea y votó en contra de la aprobación de la enmienda.

De igual modo, no es un hecho controvertido que el 12 de abril de 2022, la Junta de Directores envió una carta a los titulares para informarles que efectivo el 1 de mayo de 2022 comenzarían a emitir multas a quienes estuvieran violando las disposiciones sobre alquileres a corto plazo. Tampoco está en controversia que el 28 de junio de 2022 la Junta de Directores notificó la contratación de los servicios de guardia de seguridad, efectivo desde el 1 de julio de 2022, y les solicitó a los titulares que arrendaban sus apartamentos a corto plazo el cese de dicha práctica o de lo contrario procederían a emitir multas. Por último, no existe controversia de que el 13 de

diciembre de 2022 los querellantes recibieron de la Junta de Directores un estado de cuenta donde surgen las multas expedidas desde el mes de julio de 2022 por alegados incumplimientos con la prohibición de los arrendar los apartamentos a corto plazo.

La parte recurrente no indicó los hechos, ni adujo hechos adicionales, sobre los cuales podía existir controversia. Mas bien, las alegaciones de la parte recurrente respecto a si el acuerdo para enmendar el reglamento se alcanzó cumpliendo el requisito de votación dispuesto en la Ley de Condominios y las multas y contratación de servicios derivados de la aprobación de la enmienda plantearon un asunto de estricto derecho, carente de hechos materiales en controversia que impidieran su resolución sumaria. Ante ello, el DACO actuó correctamente al resolver de forma sumaria el caso de epígrafe, pues éste no presenta controversia en sus hechos esenciales.

En su segundo señalamiento de error, la parte recurrente articula que el DACO correctamente reconoció que la impugnación a la enmienda al reglamento estaba sujeta al término prescriptivo de dos (2) años por haberse infringido la *Ley de Condominios* en el proceso de votación. Empero, aduce que la agencia erró al aplicar el término prescriptivo de treinta (30) días a los efectos derivados de tal enmienda, tales como la imposición de multas y la contratación de la compañía de seguridad. La parte querellante entiende que si el planteamiento de nulidad de la enmienda al reglamento está sujeto al término prescriptivo mayor, el DACO debió aplicar el mismo plazo prescriptivo a las acciones derivadas de dicha enmienda.

Según se desprende del derecho expuesto, el término para ejercer la acción de impugnación dependerá del supuesto bajo el que se presente. Si se trata de una impugnación de acuerdos, acciones u omisiones que constituyen una violación a la Ley de Condominios, la escritura matriz o el reglamento del condominio, la acción

prescribirá a los dos (2) años. Si se trata de una impugnación por otro supuesto que le resulte perjudicial a los intereses de cualquier titular, éste tendrá treinta (30) días a partir de la fecha en que se tomó el acuerdo o determinación, si se hizo en su presencia, o a partir de la fecha en que recibe la notificación del acuerdo, si no estuvo presente.

La querella presentada por la parte recurrente planteaba una reclamación cobijada por ambos incisos, pues planteó que la enmienda al Reglamento del Condominio de prohibir los arrendamientos a corto plazo no contó con los votos requeridos por la Ley de Condominios para su aprobación y, además, impugnó las multas impuestas y demás medidas tomadas a raíz de la referida prohibición.

En cuanto a las multas impuestas y la contratación de la compañía de seguridad, adviértase que la parte recurrente, como titular que deseaba impugnar una actuación que entendía le resultaba perjudicial, tenía la obligación de ser diligente en procurar su derecho dentro del término de treinta (30) días prescrito en el Artículo 65 de la *Ley de Condominios* para impugnar ese tipo de acción. Ello independientemente de los planteamientos que pudiera presentar en cuanto a la validez de los acuerdos a los que llegó el Consejo de Titulares en la asamblea impugnada, para la cual, según la citada ley, contaba con un término prescriptivo de dos (2) años.

Surge de los hechos incontrovertidos que el 7 de octubre de 2021, los titulares recibieron la notificación del Acta de la Asamblea en la que se aprobó la enmienda al Reglamento de Condominio que introdujo la prohibición de arrendar los apartamentos a corto plazo y la imposición de las multas por incumplimiento. Luego, el 12 de abril de 2022, la Junta de Directores envió una carta a los titulares para informarles que efectivo el 1 de mayo de 2022, comenzarían a emitir multas a quienes estuvieran incumpliendo la mencionada

prohibición. Más adelante, el 28 de junio de 2022, la Junta de Directores notificó la contratación de los servicios de guardia de seguridad efectivo el 1 de julio de 2022, y en dicha comunicación nuevamente solicita a los titulares el cese del arrendamiento de apartamentos a corto plazo y advierte que quien incumpla con ello sería multado. El 13 de diciembre de 2022, los querellantes recibieron de la Junta de Directores un estado de cuenta donde surgen las multas expedidas desde el mes de julio de 2022, por alegados incumplimientos con la prohibición de los alquileres a corto plazo.

La querella se presentó el 31 de enero de 2023, claramente fuera del término de treinta (30) días establecido en el Artículo 65 de la *Ley de Condominios* para impugnar las multas impuestas y la contratación de la compañía de seguridad que le resultaron perjudiciales. Por consiguiente, el DACO actuó correctamente al desestimar por falta de jurisdicción las reclamaciones por las multas impuestas y la contratación de la compañía de seguridad, por haberse presentado luego de transcurrido el término prescriptivo de treinta (30) días.[17] Contrario a lo argumentado por la parte recurrente, y respecto al cuarto señalamiento de error, al declararse sin jurisdicción sobre dichos asuntos, el DACO se encontraba impedido y, de hecho, no realizó expresión alguna en torno a la legalidad de las multas y la contratación de la compañía de seguridad.

En su tercer señalamiento de error, la parte recurrente cuestiona la forma en que se computaron los votos que culminaron en la aprobación de la enmienda al Reglamento del Condominio que prohíbe los alquileres a corto plazo. Así, esboza que el Artículo 51

---

[17] En este punto, hacemos la salvedad de que, si la enmienda al Reglamento del Condominio que prohíbe los alquileres a corto plazo no hubiera sido aprobada de conformidad con el requisito de votación que establece la *Ley de Condominios*, las multas expedidas hubieran resultado improcedentes en derecho.

de la *Ley de Condominios*, supra, -que consigna que cada titular tendrá derecho a un solo voto independientemente del número de apartamentos del que sea propietario, y que se computará el por ciento de participación que sea mayor entre los apartamentos que pertenezcan a un mismo titular- únicamente aplica a los acuerdos que requieran mayoría simple (titulares presentes o representados al momento de votarse por el acuerdo), y no a las decisiones que requieran la mayoría cualificada de 2/3 partes de los titulares, que a su vez representen 2/3 partes de participación en los elementos comunes del inmueble. Entiende que, en una votación para enmendar el reglamento, donde se requiere el voto de 2/3 partes de los titulares y participaciones, no se puede excluir la participación adicional de los titulares con más de un (1) apartamento, sino que para este tipo de decisiones se deben considerar todos los titulares y todas las participaciones del inmueble. Basado en dicha teoría, la parte recurrente realiza su propio cómputo de los votos para concluir que no se alcanzó el porcentaje de las participaciones del inmueble requerido por ley para aprobar una enmienda al reglamento del condominio.

Sin embargo, la parte recurrente no cita autoridad jurídica o intención legislativa alguna que sustente su interpretación. De las disposiciones transcritas, adviértase que la *Ley de Condominios* requiere un concepto de mayoría que debe computarse no solo a base del número de titulares, sino también a base del porcentaje de participación o cuota. Por tal razón, es que la ley requiere **el voto afirmativo de las dos terceras (2/3) de todos los titulares que, a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes**. Como se observa, la ley no permite que la mayoría se defina exclusivamente a base de las cuotas. El concepto de mayoría además requiere 2/3 partes de los titulares. Por tal razón, cada titular tiene derecho a un voto y se computa el por ciento

de participación que sea mayor entre los apartamentos que pertenezcan al mismo titular. Si alguien posee varios apartamentos, tendrá tan sólo derecho a un (1) voto, aunque su titularidad sobre varios apartamentos implique que su participación sea mayor que la de sus vecinos. Muñiz Arguelles, *Lecciones sobre derechos reales,* pág. 364. De lo contrario, unos pocos titulares, dueños de varios apartamentos, lograría imponer su criterio en todas las votaciones, en contravención al principio de sana convivencia.

Conforme los resultados notificados el 1 de diciembre de 2021 por la Junta de Directores del Condominio a los titulares, luego de recibidos los votos de los ausentes, la enmienda al reglamento para prohibir los alquileres a corto plazo fue aprobada por el 74% del número de titulares, que a su vez representaban el 68.72% de participaciones en elementos comunes del inmueble, *versus*, el voto en contra de 26.74% de los titulares, quienes representaban el 31.28% de las participaciones en elementos comunes. Por consiguiente, la enmienda quedó aprobada conforme lo requiere la ley; es decir, por votación dos terceras (2/3) partes de los titulares que a su vez reunían dos terceras partes (2/3) de las participaciones en las áreas comunes.[18]

Por último, la parte recurrente alegó que el DACO erró al no ordenarle a la Junta de Directores y al Consejo de Titulares la celebración de una nueva asamblea por haber excluido a los deudores multados de la asamblea del 10 de enero de 2024.

No obstante, este reclamo de exclusión se añadió en la querella enmendada de 20 de mayo de 2024. Según el citado Artículo 65 de la *Ley de Condominios,* el titular que interese objetar una acción que le resultó perjudicial cuenta con un término de treinta (30) días, contados a partir de la actuación, para presentar

---

[18] *Supra,* nota 5.

su impugnación. La parte recurrente impugnó su exclusión de la asamblea de enero de 2024 en la querella enmendada de mayo de 2024, cuatro meses después de la acción que alega le perjudicó. Por ello, el DACO actuó correctamente al no considerar el planteamiento tardío.

Los foros judiciales concedemos deferencia a las determinaciones de hecho de las agencias administrativas debido al conocimiento especializado que estas poseen. En el presente caso, las determinaciones de hecho realizadas por el DACO están sustentadas en la prueba sustancial que obra en el expediente administrativo. Le correspondía a la parte recurrente demostrar que dichas determinaciones no encuentran apoyo en la prueba del expediente administrativo y que las conclusiones de dicha agencia son irrazonables. Sin embargo, la parte recurrente no rebatió la presunción de corrección que reviste a la decisión del DACO. Siendo así, procede confirmar la resolución recurrida.

**IV.**

Por los fundamentos que anteceden, se confirma el dictamen recurrido. Se deja sin efecto la paralización que fue ordenada por este Tribunal mediante Resolución del 31 de marzo de 2025. Por lo tanto, se restituyen los efectos de la resolución emitida el 3 de febrero de 2025 por el Departamento de Asuntos del Consumidor.

Notifíquese.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones